IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN WINSTON CLARK-JOHNSON, <br><br> Petitioner, <br><br> vs. <br><br> ERIC ARNOLD, Acting Warden, <br> California State Prison, Solano,[1] <br><br> Respondent. | No. 2:13-cv-02333-JKS <br><br> MEMORANDUM DECISION |

Ian Winston Clark-Johnson, a state prisoner proceeding *pro se*, filed a Petition for Writ of

Habeas Corpus with this Court pursuant to 28 U.S.C. § 2254.  Clark-Johnson is currently in the

custody of the California Department of Corrections and Rehabilitation and is incarcerated at

California State Prison, Solano.  Respondent has answered, and Clark-Johnson has replied.

## I. BACKGROUND/PRIOR PROCEEDINGS

The California Court of Appeal recounted the underlying facts and procedure of this case

as follows:

> One summer evening in 2006, Shaaneel Singh and a friend were returning from a
> trip to the store, on their bikes, when Singh became the victim of a drive-by shooting.
> Defendant Ian Winston Clark-Johnson drove the car; his long-time friend defendant
> Michael Scott was the front passenger.  Scott fired several shots while leaning out of the
> car's window, hitting and killing Singh.
> The People prosecuted the case as a gang crime.  Both defendants were charged
> with first degree murder with a drive-by special circumstance and firearm and gang
> enhancements.
> Despite the introduction of extensive evidence relating to gangs, including not
> only a gang expert but also letters and other writings found in Scott's jail cell, the jury

---

[1]     Eric Arnold, Acting Warden, California State Prison, Solano, is substituted for
Gary Swarthout, former Warden, California State Prison, Solano.  FED. R. CIV. P. 25(d).

rejected the prosecution theory that the crime was gang related, finding the gang enhancement ([California] Pen. Code, § 186.22, subd. (b)(1)), not true as to both Scott and Clark-Johnson.  The jury convicted Scott of first degree murder (§ 187, subd. (a)) and found true the drive-by special circumstance (§ 190.2, subd. (21)) and the personal use firearm enhancement (§ 12022 .53, subd. (d)).  The jury acquitted Clark-Johnson of first degree murder, convicted him of second degree murder, and found the firearm enhancement of section 12022.53, subdivision (e)(1) true.  Scott was sentenced to 25 years to life in prison plus life in prison without parole.  Clark-Johnson was sentenced to 15 years to life in prison.

*People v. Clark-Johnson*, No. C062076, 2011 WL 4458368, at *1 (Cal. Ct. App. Sept. 27, 2011) (footnotes omitted).

Clark-Johnson directly appealed through counsel, arguing that: 1) the evidence was insufficient to establish that he either shot Singh or aided and abetted in the shooting of Singh; 2) the trial court abused its discretion in denying his motion to bifurcate the gang enhancement from the substantive murder charge and to exclude gang-related evidence; 3) the trial court violated his right to present a defense in instructing the jury to view his testimony with caution; and 4) the trial court violated his right to due process by giving "conflicting and ambiguous instructions on whether his testimony needed to be corroborated before being believed."  Clark-Johnson further joined in all issues raised by his co-appellant Scott.  On September 27, 2011, the Court of Appeal affirmed the judgment of conviction in a reasoned, unpublished opinion.  *Id.* at *17.

Clark-Johnson filed a counseled petition for review to the California Supreme Court, raising the same claims that he unsuccessfully raised in his appeal to the Court of Appeal.  On January 4, 2012, the California Supreme Court summarily denied review.

Clark-Johnson then filed a *pro se* petition for writ of habeas corpus with the superior court, in which he argued that: 1) the trial court violated his right to confrontation in allowing the

-2-

prosecution to introduce recordings of jailhouse phone calls between Scott and third parties; and 2) the trial court erred in admitting evidence of numerous writings taken from Scott's jail cell. On February 11, 2013, the superior court denied relief in a reasoned opinion, and on March 21, 2013, the superior court denied Clark-Johnson's motion for reconsideration.

Clark-Johnson then filed a *pro se* petition for habeas relief to the Court of Appeal, in which he raised the same arguments he raised in his prior habeas petition. The Court of Appeal summarily denied relief on May 9, 2013, and rejected Clark-Johnson's motion for reconsideration on May 22, 2013.

Clark-Johnson subsequently filed a *pro se* petition for habeas relief to the California Supreme Court, again raising the same arguments he had unsuccessfully raised in his habeas petitions to the lower state courts. The California Supreme Court summarily denied review on September 18, 2013. Clark-Johnson filed his *pro se* Petition to this Court on November 6, 2013.

## II. GROUNDS RAISED

In his Petition before this Court, Clark-Johnson argues that: 1) the trial court erroneously admitted Scott's jailhouse telephone calls to third parties; 2) the trial court erred in failing to bifurcate the gang enhancement from the substantive murder charge; 3) the trial court erroneously admitted into evidence numerous writings taken from Scott's jail cell; 4) the trial court erroneously instructed the jury to view his testimony with caution; and 5) the trial court charged the jury with two conflicting and confusing jury instructions. He additionally requests an evidentiary hearing.

III. STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), this Court cannot grant relief unless the decision of the state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).  A state-court decision is "contrary" to federal law "if the state court applies a rule that contradicts the governing law set forth" in controlling Supreme Court authority or "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court but nevertheless arrives at a different result.  *Williams v. Taylor*, 529 U.S. 362, 406 (2000).

The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision," *Williams*, 529 U.S. at 412, and not circuit precedent, *see Renico v. Lett*, 559 U.S. 766, 778-79 (2010).  The holding must also be intended to be binding upon the states; that is, the decision must be based upon constitutional grounds and not on the supervisory power of the Supreme Court over federal courts.  *Early v. Packer*, 537 U.S. 3, 10 (2002).  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"  *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (citation omitted).

To the extent that the Petition raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  *See Swarthout v. Cooke*, 131 S.

Ct. 859, 863 (2011) (per curiam) (holding that it is of no federal concern whether state law was correctly applied).  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.  *See, e.g.*, *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (presuming that the state court knew and correctly applied state law), *overruled on other grounds by Ring v. Arizona*, 536 U.S. 584 (2002).  Under the AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

## IV. DISCUSSION

Claim one: admission of phone calls Scott made from jail

CD's of several phone calls that Scott made to third parties while he was incarcerated were admitted into evidence and played for the jury.  A police officer testified that some of Scott's veiled references in those calls were to Clark-Johnson, his vehicle, and his involvement in the crime.  In his habeas petition to the superior court, Clark-Johnson argued that the admission of those calls violated his right to confrontation.  He claimed that "[w]ithout the required cross-examination, [he] was deprived of his right to properly clarify whether, as the prosecution had alleged, the parties in the recordings were in fact referencing him.  And where they were referencing him, he was then denied his right to clarify what was meant by the

references."  The superior court misconstrued his argument as an ineffective assistance of

counsel claim,[2] and denied him relief:

> [Clark-Johnson] argues that the trial court improperly admitted recordings of
> phone calls made between Scott and others while Scott was in the county jail.  As he did
> not raise the claim on appeal, which it normally should have been, he raises it here in the
> context of a claim of ineffective assistance of appellate counsel.  First, [Clark-Johnson]
> has not shown that appellate counsel should have raised the claim on appeal.  [Clark-
> Johnson] provides no authority for his claim that the statements were "testimonial,"
> bringing the statements within *Crawford*.  To the contrary, because Scott attempted to
> conceal his identity by using another inmate's [x reference] number to place the phone
> calls, the statements between Scott and friends were made without any reasonable
> expectation that they would be used at trial.  (*See People v. Cervantes* (2004) 118 Cal.
> App. 4th 162, 174.)  Next, [Clark-Johnson] has not shown that appellate counsel's
> conduct was prejudicial: even if counsel had raised the issue on appeal, it is not likely
> that it would have affected the outcome.  In the jail conversations, Scott and others at
> most identified [Clark-Johnson] as being present at the time of the shooting and being
> connected to the vehicle involved in the shooting.  According to the opinion on appeal,
> [Clark-Johnson] testified that he was driving his car with Scott as a passenger when Scott
> leaned out the window with a gun and the victim was shot and killed.  By his own
> admission, he was driving the car from which Scott shot and killed the victim.  Therefore,
> it was not prejudicial to admit the jail tapes identifying [Clark-Johnson] as being with
> Scott at the time of the shooting.  Finally, [Clark-Johnson] suggests that there may have
> been information in the recordings that the jury used to find that [he] aided and abetted
> Scott's actions, without which [he] would have been acquitted.  However, he does not
> identify that information other than the general references to [him] being present during
> the shooting, which he admitted at trial.  As a result, he has not shown that appellate
> counsel was ineffective for failing to raise the issue on appeal.

The Confrontation Clause of the Sixth Amendment affords a criminal defendant the right

to cross-examine witnesses against him.  *Delaware v. Van Arsdall*, 475 U.S. 673, 678 (1986).  In

*Bruton v. United States*, 391 U.S. 123, 127-28 (1968), the United States Supreme Court held

that, in a joint trial of two or more co-defendants, it is a violation of the Confrontation Clause to

---

[2]      Question 10 of the petition form asks the petitioner to explain if and why his
claims were not raised on direct appeal.  Clark-Johnson responded, "My attorney was ineffective
in failing to raise these issues."  Based on this one line in the petition, the superior court
interpreted his argument as an ineffective assistance of counsel claim.

admit the statement or confession of a non-testifying defendant that inculpates the other, even

where the jury is instructed to consider the statements only as to the declarant. *Bruton's* scope

was limited by *Richardson v. Marsh*, 481 U.S. 200, 208 (1987), in which the Supreme Court

held that the admission of a non-testifying co-defendant's confession does not violate the

Confrontation Clause where a proper limiting instruction is given and "the confession [is] not

incriminating on its face [but becomes] so only when linked with evidence introduced later at

trial." *But see Gray v. Maryland*, 523 U.S. 185, 189-92 (1998).

In *Crawford v. Washington*, 541 U.S. 36, 51 (2004), the Supreme Court clarified Sixth

Amendment jurisprudence and held that the Confrontation Clause guarantees a defendant's right

to confront all witnesses who bear testimony against him. The Supreme Court explained that the

Sixth Amendment prohibits the admission of "testimonial" hearsay unless the declarant is

unavailable and the defendant had a prior opportunity for cross-examination. *Id.* at 68.

*Crawford* and its progeny have made clear that Confrontation Clause protections are limited to

testimonial statements. *See Giles v. California*, 554 U.S. 353, 376 (2008) ("[O]nly *testimonial*

statements are excluded by the Confrontation Clause."); *Whorton v. Bockting*, 549 U.S. 406, 420

(2007) (Confrontation Clause has "no application" to non-testimonial statements).

Although the Ninth Circuit has not expressly held so, other circuits have concluded that

*Bruton* must be viewed through the lens of *Crawford*, and that *Bruton* therefore does not apply to

non-testimonial statements. *See Peoples v. Gipson*, No. CV 10-09107, 2011 WL 5593789, at

*11 (C.D. Cal. Oct. 28, 2011) (noting that "numerous other circuits have held that *Bruton* does

not apply to non-testimonial statements"); *see, e.g.*, *United States v. Dargan*, 738 F.3d 643, 651

(4th Cir. 2013) ("*Bruton* is simply irrelevant in the context of nontestimonial statements. *Bruton*

espoused a prophylactic rule designed to prevent a specific type of Confrontation Clause violation.  Statements that do not implicate the Confrontation Clause, *a fortiori*, do not implicate *Bruton*."); *United States v. Berrios*, 676 F.3d 118, 128 (3d Cir. 2012) ("[B]ecause *Bruton* is no more than a by-product of the Confrontation Clause, the [Supreme] Court's holdings in *Davis* and C*rawford* likewise limit *Bruton* to testimonial statements."); *United States v. Figueroa-Cartagena*, 612 F.3d 69, 85 (1st Cir. 2010) ("It is thus necessary to view *Bruton* through the lens of *Crawford* and *Davis*.  The threshold question in every case is whether the challenged statement is testimonial.  If it is not, the Confrontation Clause has 'no application.'" (quoting *Whorton*, 549 U.S. at 420)); *United States v. Smalls*, 605 F.3d 765, 768 n.2 (10th Cir. 2010) ("[T]he *Bruton* rule, like the Confrontation Clause upon which it is premised, does not apply to nontestimonial hearsay statements."); *United States v. Dale*, 614 F.3d 942, 958 (8th Cir. 2010) ("Reading *Bruton* in light of *Crawford*, we concluded that a *Bruton* violation must be predicated on a *testimonial* out-of-court statement implicating a co-defendant."); *United States v. Johnson*, 581 F.3d 320, 326 (6th Cir. 2009) ("Because it is premised on the Confrontation Clause, the *Bruton* rule, like the Confrontation Clause itself, does not apply to nontestimonial statements."); *United States v. Taylor*, 509 F.3d 839, 850 (7th Cir. 2007) (concluding that there was no *Bruton* error because the challenged remarks were non-testimonial under *Crawford*).  Accordingly, if the statement is not testimonial, neither *Crawford* nor *Bruton* apply.

Although "leav[ing] for another day any effort to spell out a comprehensive definition of 'testimonial,'" *Crawford* offered three "formulations of [the] core class of 'testimonial' statements": 1) "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-

examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"; 2) "extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions"; and 3) "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  541 U.S. at 51-52, 68 (citations omitted). "[A]t a minimum," it applies to "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations."  *Id.* at 68.  Subsequent Supreme Court case law clarified that to determine if a statement is testimonial, the court must decide whether it has "a primary purpose of creating an out-of-court substitute for trial testimony."  *Michigan v. Bryant*, 131 S. Ct. 1143, 1150, 1155 (2011) (victim's identification and description of the shooter and the location of the shooting were not testimonial because they had a "primary purpose . . . to enable police assistance to meet an ongoing emergency"); *see Bullcoming v. New Mexico*, 131 S. Ct. 2705, 2720-21 (2011) (Sotomayor, J., concurring) (blood alcohol laboratory report and the technician's certification were testimonial because they had a "primary purpose of creating an out-of-court substitute for trial testimony") (quoting *Bryant*, 131 S. Ct. at 1155); *Davis v. Washington*, 547 U.S. 813, 822 (2006) (911 phone call was non-testimonial because its "primary purpose" was to "enable police assistance to meet an ongoing emergency" and not to "establish or prove past events potentially relevant to later criminal prosecution").

The superior court's conclusion that Scott's jailhouse phone calls to third parties were non-testimonial because they were made without any reasonable expectation that they would be used at trial was not unreasonable under the circumstances.  Although all outgoing calls from jail are recorded, Kenneth Shelton, an intelligence officer who worked at the county jail, testified

that inmates use a variety of techniques to conceal their identities and those of the phone call recipients, as well as to make it harder to discover the content of their calls.  Inmates may use another inmate's x reference, or identification number, which must be inputted before making each call.  Inmates also use 3-way calls, and blow into the receiver while entering the number to mask the pulse of buttons being pushed, to make it difficult for the jail to track which telephone number was called.  Scott used both of these techniques to avoid detection of his identity and the identity of the person receiving the calls, and additionally employed veiled references to disguise the subject matter of his conversations.  Scott specifically assured one recipient that he was not calling under his x reference number because "they try to listen to my shit.  I called under one of the homies."  His statements did not have a "a primary purpose of creating an out-of-court substitute for trial testimony," *Bryant*, 131 S. Ct. at 1155, but were rather made in a surreptitious manner to avoid their use at trial.  Clark-Johnson has pointed to no case law—nor has this Court found on its own review—indicating that despite Scott's deliberate attempts to avoid being listened to by jail officers, he nevertheless reasonably expected that the content of his calls would be used at trial.   Rather, because Scott sought and believed he was avoiding detection, they appear more akin to the kinds of statements to friends and family outside of a law enforcement or investigatory context which have been held to be non-testimonial in nature, even if recorded.  *See, e.g., United States v. Hendricks*, 395 F.3d 173, 181 (3d Cir. 2005) (surreptitiously monitored private conversations and statements in wiretap records were non-testimonial because, among other reasons, "the speakers certainly did not make the statements thinking that they would be available for later use at trial") (citation omitted).  The superior court

-10-

therefore reasonably concluded that Scott's calls were non-testimonial, and accordingly, neither *Bruton* nor *Crawford* applied and there was no error.

In any event, any error in the admission of the calls is harmless. *See Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009) ("Confrontation Clause errors are subject to harmless-error analysis.").  As the superior court noted, the calls made only tangential references to Clark-Johnson's involvement, identifying him as being present at the time of the shooting and being connected to the vehicle involved, and Clark-Johnson admitted at trial that he was driving his car with Scott as a passenger when Scott leaned out the window with a gun and the victim was shot and killed.  Clark-Johnson has not alleged that he would not have testified had the phone calls been excluded.  Because the reference to Clark-Johnson in Scott's phone calls was cumulative of other evidence introduced at trial, any error in their admission did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993).  Clark-Johnson therefore cannot prevail on his Confrontation Clause claim.

Claim two: failure to bifurcate the gang enhancement

Clark-Johnson next argues that the trial court erred in denying his motion to bifurcate the gang enhancement from the substantive murder charge.  The California Court of Appeal concluded that the trial court did not abuse its discretion in denying the motion to bifurcate because the gang evidence has some relevance to the charged offense, and the gang evidence was not unduly inflammatory compared to the facts of the instant case. *Clark-Johnson*, 2011 WL 4458368, at *7-10 (footnote omitted).

The United States Supreme Court has never held that a criminal defendant has a federal constitutional right to bifurcation. *Spencer v. Texas*, 385 U.S. 554, 568 (1967) ("Two-part jury

trials are rare in our jurisprudence; they have never been compelled by this Court as a matter of constitutional law, or even as a matter of federal procedure."); *see also Marshall v. Lonberger*, 459 U.S. 422, 438 n.6 (1983) (reaffirming *Spencer*).  Therefore, a court may grant habeas relief based on a state court's decision to deny a motion for bifurcation was so prejudicial that it denied a petitioner his right to a fair trial.  *Zafiro v. United States*, 506 U.S. 534, 539 (1993) (a court must consider whether "there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence"); *Featherstone v. Estelle*, 948 F.2d 1497, 1503 (9th Cir. 1991) ("The simultaneous trial of more than one offense must actually render petitioner's state trial fundamentally unfair and hence, violative of due process before relief pursuant to 28 U.S.C. § 2254 would be appropriate.") (citation omitted); *Studebaker v. Uribe*, 658 F. Supp. 2d 1102, 1125 (C.D. Cal. 2009).

Here, evidence of gang membership was relevant to explain the reluctance of certain witnesses to testify or the motivation for those who changed their stories at trial, as well as a possible motive for the crime.  This was not a case where the "joinder of counts allow[ed] evidence . . . to be introduced in a trial where the evidence would otherwise be inadmissible." *Sandoval v. Calderon,* 241 F.3d 765, 772 (9th Cir. 2000).  Second, the trial court repeatedly instructed the jury that the gang evidence was relevant only to show the basis of the gang expert's opinion that Clark-Johnson was a gang member, and not for the truth of the matter asserted.  *Clark-Johnson*, 2011 WL 4458368, at *13.  The jury is presumed to have followed those instructions, *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), and such instructions guard against any prejudice which may flow from the joinder of offenses, *see Spencer*, 385 U.S. at 562.

Third, by finding the gang enhancement not true, the members of the jury indicated that they were not swayed by the gang evidence that was introduced at trial.  In short, Clark-Johnson has not met his burden of proving that the trial court's denial of his motion for bifurcation rendered his trial fundamentally unfair, and he cannot prevail on this claim.

Claim three: admission of writings from Scott's jail cell

Clark-Johnson next argues that the trial court erred in admitting into evidence certain letters, photos, rap lyrics, and newspaper clippings that were found during a search of Scott's jail cell.  Scott raised this argument on direct appeal, and Clark-Johnson joined in Scott's arguments on appeal.  The Court of Appeal found that the trial court abused its discretion in admitting the writings in their entirety, but that the error was harmless.

*Clark-Johnson*, 2011 WL 4458368, at \*10-13.

The Supreme Court has acknowledged its "traditional reluctance to impose constitutional restraints on ordinary evidentiary rulings by state trial courts."  *Crane v. Kentucky*, 476 U.S. 683, 689 (1986).  The Supreme Court has further made clear that federal habeas power does not allow granting relief on the basis of a belief that the state trial court incorrectly interpreted the state evidence code in ruling on the admissibility of evidence.  *Estelle*, 502 U.S. at 72 (1991) (citing *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  A petitioner seeking habeas relief from an allegedly erroneous evidentiary ruling bears the burden of establishing that the evidentiary error deprived the petitioner of due process because it was so pervasive that it denied the petitioner a fundamentally fair trial.  *Brecht*, 507 U.S. at 637.

Clark-Johnson has not and cannot meet this standard.  Even assuming that the trial court

erred in its admitting the challenged evidence, Clark-Johnson certainly cannot show fundamental

unfairness given that, as the Court of Appeal recognized, the intent to kill was obvious from the

manner in which it was conducted, the trial court repeatedly instructed the jury on the limited use

of this evidence and the jury found not true the gang enhancement, indicating it was not

overwhelmed by the gang evidence.  Clark-Johnson consequently cannot prevail on his

evidentiary error claim.

Claims four and five: instructional errors

Clark-Johnson raises two intertwined instructional error claims.  A challenged instruction

violates the federal constitution if there is a "reasonable likelihood that the jury has applied the

challenged instruction in a way that prevents the consideration of constitutionally relevant

evidence." *Boyde v. California*, 494 U.S. 370, 380 (1990).  It is well established that not only

must the challenged instruction be erroneous but it must violate some constitutional right, and it

may not be judged in artificial isolation but must be considered in the context of the instructions

as a whole and the trial record.  *Estelle*, 502 U.S. at 72.  This Court must also bear in mind that

the Supreme Court has admonished that the inquiry is whether there is a reasonable likelihood

that the jury applied the challenged instruction in a way that violates the constitution and that the

category of infractions that violate "fundamental fairness" is very narrowly drawn.  "Beyond the

specific guarantees enumerated in the Bill of Rights, the Due Process clause has limited

operation." *Id*. at 73 (citation omitted).  Where the defect is the failure to give an instruction, the

burden is even heavier because an omitted or incomplete instruction is less likely to be

prejudicial than an instruction that misstates the law.  *See Henderson*, 431 U.S. at 155.  In those

-14-

cases, the inquiry is whether the trial court's refusal to give the requested instruction "so infected the entire trial that the resulting conviction violates due process."  *See id.* at 156-57; *Estelle*, 502 U.S. at 72.

     A.     CALCRIM 334

     Clark-Johnson argues that the trial court erred in charging the jury with CALCRIM 334.

The Court of Appeal rejected this claim on direct appeal as follows:

> The trial court indicated there was evidence that Clark-Johnson was an accomplice and it would instruct the jury accordingly.  Clark-Johnson requested tailoring the standard instruction that an accomplice's testimony should be viewed with distrust and required corroboration so that such instruction did not apply to his testimony in his own defense.  The trial court agreed.
> The written version of CALCRIM No. 334 given to the jury read:

> > "Before you may consider the statement or testimony of Ian Johnson as evidence against the defendant Michael Scott, you must decide whether Ian Johnson was an accomplice to that crime.  A person is an accomplice if he or she is subject to prosecution for the identical crime charged against the defendant. Someone is subject to prosecution if he or she personally committed the crime or if:

> > 1. He or she knew of the criminal purpose of the person who committed the crime;

> > AND

> > 2. He or she intended to, and did in fact, aid, facilitate, promote, encourage, or instigate the commission of the crime.

> > The burden is on the defendant to prove that it is more likely than not that Ian Johnson was an accomplice.
> > An accomplice does not need to be present when the crime is committed. On the other hand, a person is not an accomplice just because he or she is present at the scene of the crime, even if he or she knows that a crime will be committed or is being committed and does nothing to stop it.
> > If you decide that a declarant or witness was an accomplice, then you may not convict the defendant Michael Scott of the murder charged in Count 1 or of a lesser offense, nor may you find true any further allegations against him based on

his or her statement or testimony alone.  You may use the statement or testimony of an accomplice to convict the defendant only if:

> 1. The accomplice's statement or testimony is supported by other evidence that you believe;

> 2. That supporting evidence is independent of the accomplice's statement or testimony;

> AND

> 3. That supporting evidence tends to connect the defendant to the commission of the crime.

> Supporting evidence, however, may be slight.  It does not need to be enough, by itself, to prove that the defendant is guilty of the charged crime, and it does not need to support every fact mentioned by the accomplice in the statement or about which the accomplice testified.  On the other hand, it is not enough if the supporting evidence merely shows that a crime was committed or the circumstances of its commission.  The supporting evidence must tend to connect the defendant to the commission of the crime.
> Any statement or testimony of an accomplice that tends to incriminate the defendant should be viewed with caution. You may not, however, arbitrarily disregard it.  You should give that statement or testimony the weight you think it deserves after examining it with care and caution and in the light of all the other evidence.
> Insofar as defendant Ian Johnson's testimony or statements are considered in connection with the charges against Mr. Johnson himself, the supporting evidence requirement does not apply."

When the court orally instructed the jury, it slightly modified the written instruction, stating in pertinent part: "Any statement or testimony of an accomplice that tends to incriminate the defendant—*meaning the defendant Scott*—should be viewed with caution.  You may not, however, arbitrarily disregard it.  You should give that statement or testimony the weight you think it deserves after examining it with care and caution and in light of all the other evidence."

Clark-Johnson contends the written instruction failed to tell the jury that the advisement to view an accomplice's testimony with caution did not apply when his testimony was used to assess his own guilt.  He concedes the oral instruction made this point, but relies on the rule that where oral and written instructions conflict, the written instruction controls.  (*People v. Wilson* (2008) 44 Cal. 4th 758, 803.)

"When the evidence at trial would warrant the jury in concluding that a witness was an accomplice of the defendant in the crime or crimes for which the defendant is on trial, the trial court must instruct the jury to determine if the witness was an accomplice."

(*People v. Hayes* (1999) 21 Cal. 4th 1211, 1270-1271.)  The court must further instruct the jury that the testimony of an accomplice is to be viewed with caution and that the defendant may not be convicted on the basis of an accomplice's testimony unless it is corroborated.  (*People v. Hayes, supra,* 21 Cal. 4th at p. 1271.)  Where a codefendant's testimony exculpates himself but incriminates his codefendant, the jury should be instructed to view the testifying codefendant's testimony with caution only as it applies to the other defendant.  (*People v. Coffman & Marlow* (2004) 34 Cal. 4th 1, 104-105; *People v. Alvarez* (1996) 14 Cal. 4th 155, 217.)

      "'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citation.]"  (*People v. Carrington* (2009) 47 Cal. 4th 145, 192 .)  Viewing the instructions as a whole, we find no error.  CALCRIM No. 334 began by telling the jury how to consider Clark-Johnson's testimony as evidence against Scott.  The advisement to view an accomplice's testimony with caution applied only to an accomplice's statement or testimony "that tends to incriminate the defendant."  By its own terms, therefore, the instructions on how to view an accomplice's testimony would not apply to Clark-Johnson's testimony in his own defense, only to his testimony against Scott.  Further, in the context of the entire instruction, it was clear the references to "the defendant" referred to Scott.

      Moreover, in reading the instructions, the court clarified that the cautionary advisement applied only to testimony against Scott.  There is no evidence the jury was confused about the slight difference between the written and oral instructions or found an inconsistency; it asked no question about the difference.

      "A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]"  (*People v. Cross* (2008) 45 Cal. 4th 58, 67-68.)  Since the reasonable interpretation of the instructions, taken as a whole, was that the special treatment of accomplice testimony applied only to Clark-Johnson's testimony against Scott, Clark-Johnson has failed to carry this burden.

*Clark-Johnson*, 2011 WL 4458368, at *13-15.

    Clark-Johnson's argument that "the jury was never told that it should view [his] testimony with caution only with respect to Scott, and not [himself]," is without merit.  First, to the extent he claims that the instruction violates state law, his claim is not cognizable on federal habeas review.  *Estelle*, 502 U.S. at 71-72 ("[T]he fact that [an] instruction was allegedly incorrect under state law is not a basis for habeas relief.").  And, viewing the instructions as a whole, it is clear that the court instructed the jury to view with caution only Clark-Johnson's

-17-

testimony as against his co-defendant Scott.  Although Clark-Johnson would have preferred a

more explicit reference as to how his testimony could be considered, the instruction was correct

under state law and did not violate any constitutional right.  Clark-Johnson therefore cannot

prevail on this claim.

B. CALCRIM Nos. 301 and 334

Clark-Johnson next argues that the trial court gave "conflicting and ambiguous

instructions on whether his testimony needed to be corroborated before being believed."  The

Court of Appeal rejected this claim on direct appeal as follows:

> In discussing jury instructions, the parties and the trial court considered
> amendments to CALCRIM No. 301, which informs the jury that the testimony of one
> witness is sufficient to prove a fact.  The concern was that although the testimony of an
> accomplice requires corroboration, Clark-Johnson's testimony, even if he were an
> accomplice, did not require corroboration when applied to his own defense.  The parties
> discussed different possibilities to make this point and the trial court indicated it would
> "mess with" the instruction "a little bit."
>     The court instructed the jury with a modified CALCRIM No. 301 as follows:
> "With one exception, the testimony of only one witness can prove any fact.  Before you
> conclude that the testimony of one witness proves a fact, you should carefully review all
> the evidence.  The exception concerns the testimony of Ian Johnson if you determine that
> he was an accomplice."  The court then told the jurors that instruction No. 334 should
> guide them in determining how to treat Clark-Johnson's testimony as to Scott, depending
> on whether they found Clark-Johnson to be an accomplice.
>     Clark-Johnson contends the CALCRIM Nos. 301 and 334 instructions were
> conflicting and confusing.  While CALCRIM No. 334 told the jury Clark-Johnson's
> testimony did not require corroboration to the extent it was considered on the question of
> his guilt, he contends CALCRIM No. 301, which declared an exception for his testimony,
> suggested his entire testimony required corroboration.
>     "In determining the correctness of jury instructions, we consider the instructions
> as a whole.  [Citation.]  An instruction can only be found to be ambiguous or misleading
> if, in the context of the entire charge, there is a reasonable likelihood that the jury
> misconstrued or misapplied its words. [Citation.]"  (*People v. Campos, supra,* 156 Cal.
> App. 4th at p. 1237.)
>     This is not a case like *People v. Maurer* (1995) 32 Cal. App. 4th 1121, cited by
> Scott, in which the jury was given directly conflicting instructions on motive.  In *Maurer,*
> defendant was charged with misdemeanor child annoyance (§ 647.6) and the jury was
> properly instructed that it must find defendant's acts or conduct were "motivated by an

unnatural or abnormal sexual interest in" the victim.  (*Maurer, supra,* 32 Cal. App. 4th at p. 1125.)  The jury was also instructed, however, that "Motive is not an element of the crime charged and need not be shown."  (*Maurer, supra,* at p. 1126.)  Since these instructions directly conflicted on whether motive had to be proven, this court found it was error not to exclude section 647.6 from the general instruction that motive was not an element of the crime, and the error was prejudicial. (*Id.* at pp. 1126-1132.)

There was no similar direct conflict between the instructions here.  In CALCRIM No. 334, the court made clear that no corroboration was required for Clark-Johnson's testimony as to his guilt.  "Insofar as defendant Ian Johnson's testimony or statements are considered in connection with the charges against Mr. Johnson himself, the supporting evidence requirement does not apply."  The court referred to this instruction immediately after the court noted the exception to the rule that a fact may be proved by the testimony of a single witness.  We disagree that the instructions were confusing.  If the jury were to have required corroboration for Clark-Johnson's testimony on his own behalf, they would have done so only by disregarding explicit instruction from the court.   Accordingly, we find no "reasonable likelihood that the jury misunderstood and misapplied the instruction." (*People v. Smithey* (1999) 20 Cal. 4th 936, 963.)

*Clark-Johnson*, 2011 WL 4458368, at *15-16.

Again, viewing the instructions as a whole, they were correct under state law, there is no evidence the jury was confused by the instructions, and they did not violate any constitutional right.  Clark-Johnson thus cannot prevail under either of his instructional error claims.

Evidentiary hearing

On the first page of his Petition, Clark-Johnson requests an evidentiary hearing.  Clark-Johnson fails, however, to specify what evidence he wishes to present for each claim.  A district court may not hold an evidentiary hearing on a claim for which a petitioner failed to develop a factual basis in state court unless the petitioner shows that: (1) the claim relies either on (a) a new rule of constitutional law that the Supreme Court has made retroactive to cases on collateral review, or (b) a factual predicate that could not have been previously discovered through the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to establish

by clear and convincing evidence that, but for constitutional error, no reasonable fact finder would have found the petitioner guilty of the underlying offense.  28 U.S.C. § 2254(e)(2).

Where the failure to develop the factual basis for the claim in the state court proceedings is not attributable to the petitioner, to receive an evidentiary hearing, the petitioner must make a colorable claim for relief and meet one of the factors set forth in *Townsend v. Sain*, 372 U.S. 293 (1963).  *Insyxiengmay v. Morgan*, 403 F.3d 657, 670-71 (9th Cir. 2005).  In *Townsend*, the Supreme Court concluded that a federal habeas petitioner is entitled to an evidentiary hearing on his factual allegations if: (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing.  *Id.* at 670 (quoting *Townsend*, 372 U.S. at 313), *overruled in part by Keeney v. Tamayo-Reyes*, 504 U.S. 1 (1992).

As discussed above, Clark-Johnson has failed to assert a colorable claim for relief as to either of these claims.  Because he does not cite to new laws or underlying facts that were not developed on the record before the state courts, he also has failed to satisfy his burden of proof under 28 U.S.C. § 2254(e)(2).  Accordingly, Clark-Johnson's request for an evidentiary hearing on these claims is denied.

## V. CONCLUSION AND ORDER

Clark-Johnson is not entitled to relief on any ground raised in his Petition.

**IT IS THEREFORE ORDERED THAT** the Petition under 28 U.S.C. § 2254 for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED THAT** Clark-Johnson's request for an evidentiary hearing is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court declines to issue a Certificate of Appealability.  *See* 28 U.S.C. § 2253(c); *Banks v. Dretke*, 540 U.S. 668, 705 (2004) ("To obtain a certificate of appealability, a prisoner must 'demonstrat[e] that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" (quoting *Miller-El*, 537 U.S. at 327)).  Any further request for a Certificate of Appealability must be addressed to the Ninth Circuit Court of Appeals.  *See* FED. R. APP. P. 22(b); 9TH CIR. R. 22-1.

The Clerk of the Court is to enter judgment accordingly.

Dated: September 2, 2014.

/s/James K. Singleton, Jr.
JAMES K. SINGLETON, JR.
Senior United States District Judge